**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION**

CANDICE TUTTLE,

      Plaintiff,

      v.

TRIAGELOGIC, LLC,

      Defendant.

CIVIL ACTION NO.: 4:24-cv-110

**O R D E R**

      Plaintiff Candice Tuttle sued Defendant for discrimination she claims she suffered after she disclosed that she was pregnant while working remotely for Defendant.  (Doc. 1.)  Plaintiff sued under various federal and state laws challenging the discriminatory acts and seeking compensation for unpaid hours worked.  (Id.)  Presently before the Court is Defendant Triagelogic, LLC's partial Motion to Dismiss Plaintiff's state law claims, in which it argues that, because Plaintiff lived and performed her work in Georgia at all relevant times, she is not entitled to the protections of Florida state law.  (Doc. 5; doc. 5-1, pp. 14–19.)  Plaintiff filed a Response, (doc. 11), and Defendant filed a Reply, (doc. 12).  For the reasons stated below, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's Motion.  (Doc. 5.)

**BACKGROUND**

I.     **Plaintiff's Employment with Defendant**

      The facts below are alleged in the Complaint.  (Doc. 1.)  Plaintiff is a woman residing in Savannah, Georgia.  (Id. at p. 2.)  Defendant TriageLogic is a telehealth company, which provides "access to health care services remotely."  (Id. at p. 5.)  Defendant is a corporation with about sixty

employees.  (Id. at pp. 2, 7.)  Defendant is licensed in Delaware and maintains its corporate headquarters in Jacksonville, Florida.  (Id. at p. 2.)  Defendant is owned by Doctor Ravi Raheja and Charu Raheja ("Owners").  (Id. at p. 7.)

In December 2021, Plaintiff accepted a remote position with Defendant as a customer service information technology ("IT") support person.  (Id. at p. 5.)  Plaintiff reported to IT Manager Cody Stanley, who was responsible for training her.  (Id. at 9.)  When Plaintiff started, she received a salary that was less than that of her male coworkers in similar roles.  (Id. at p. 7.)  Generally, men employed by Defendant were paid more than women.  (Id.)

Plaintiff initially excelled at her job and developed strong working relationships with her colleagues.  (Id.)  The Owners would check in with Plaintiff regularly through teleconferencing.  (Id. at pp. 8–9.)  On January 19, 2022, Plaintiff was required to attend a teleconference meeting designed for co-workers to get to know one another.  (Id. at p. 10.)  The Owners were at this meeting.  (Id.)  In this meeting, Plaintiff disclosed the fact that she was pregnant, which she said was met with an awkward silence.  (Id. at p. 11.)  The Owners appeared unhappy and rushed through the rest of the meeting.  (Id. at p. 12.)  After the meeting, Plaintiff reached out to a colleague who confirmed her belief that her pregnancy announcement was received negatively.  (Id.)  The next day, Plaintiff received barely any phone calls or emails, which she believed was attributed to her pregnancy announcement.  (Id.)

On January 21, 2022, Plaintiff drove down to Florida with another colleague for an in-person meeting with her team.  (Id.)  Defendant invited the team to meet in-person because they were all working remotely.  (Id. at p. 13.)  This was the only time that Plaintiff visited Defendant's office and all other meetings were conducted remotely.  (Id. at p. 6.)  Plaintiff attended lunch with the Owners, Stanley, and two human resources ("HR") representatives.  (Id. at p. 13.)  During the

2

lunch, the Owners asked Plaintiff personal questions about her pregnancy.  (Id. at pp. 13–14.)

Specifically, Plaintiff was asked about whether her gestational diabetes was attributed to her

pregnancy, and what her living situation was with respect to the father of her child.  (Id.)  After

lunch, Plaintiff was approached by one of the HR representatives who stated their disbelief that

the Owners asked such inappropriate questions.  (Id. at p. 15.)  Plaintiff thought about reporting

this incident but ultimately decided not to because she had not received the employee handbook

or any other document outlining Defendant's policies and procedures about discrimination.  (Id.

at p. 16.)

 After this lunch, the Owners stopped reaching out to Plaintiff entirely, despite regularly

checking in on her coworkers.  (Id. at pp. 16–17.)  Likewise, Stanley stopped training and helping

Plaintiff.  (Id. at p. 17.)  Plaintiff later faced other incidents which made her anxious about her job

security, such as being placed on call without pay and having her emails and requests for training

ignored by both Stanley and HR.  (Id. at pp. 17–18.)

 On March 24, 2022, Plaintiff was given a negative performance review and told she needed

to be more proactive in requesting training from Stanley.  (Id. at p. 18.)  Plaintiff requested a copy

of her performance review but never received it.  (Id. at p. 19.)

 On March 31, 2022, Plaintiff was made to attend an unscheduled teleconference meeting

with Ravi Raheja and an HR representative where she was told she was being laid off because she

was not a good fit for remote work.  (Id. at pp. 20–21.)

## II.    Procedural History

 Plaintiff filed this action against Defendant on November 27, 2023, in the Northern District

of Georgia.  (See generally id.)  Plaintiff alleged ten counts against Defendant: (I) gender

discrimination in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, et seq. ("Title

VII"); (II) pregnancy discrimination under Title VII and the Pregnancy Discrimination Act, 42 U.S.C. §§ 2000e et seq.; (III) disability discrimination in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq. ("ADA"); (IV) sex and pregnancy discrimination in violation of the Florida Civil Rights Act ("FCRA"); (V) disability discrimination in violation of the FCRA; (VI) marital status discrimination in violation of the FCRA; (VII) unequal pay in violation of the Fla. Stat. Ann. § 448.07; (VIII) unpaid overtime wages in violation of the Fair Labor Standards Act, 29 U.S.C. § 207; (IX) unpaid wages and unpaid overtime wages in violation of Fla. Stat. Ann § 448.110; and (X) punitive damages and attorney's fees.  (Id. at pp. 22–35.)

Defendant then filed the at-issue Motion, arguing that (1) the court should dismiss or transfer the case for improper venue; and (2) the court should dismiss Plaintiff's state law claims (Counts IV, V, VI, VII, and IX).  (Docs. 5, 5-1.)  Defendant argues that the Florida state law claims cannot be brought by individuals working outside the state of Florida.  (Doc. 5-1, pp. 14–19.) Plaintiff filed a Response stating that she did not oppose transfer to the Southern District of Georgia, but arguing that the state law claims should not be dismissed because some events pertinent to the lawsuit occurred in the state of Florida.  (Doc. 11, pp. 8–10.)  Defendant filed a Reply.  (Doc. 12.)

The motion to transfer was granted, and the case was transferred to this Court on June 5, 2024.  (Docs. 13, 14.)  Because only the first part of the Motion was resolved by the Northern District's transfer of the case, this Court must address the partial Motion to Dismiss Plaintiff's state law claims.  (See generally doc. 5-1; doc. 13, p. 8.)

## DISCUSSION

Defendant moves to dismiss all of Plaintiff's state law claims, which are contained in Counts IV, V, VI, VII, and IX because, it claims, "[a]s a Georgia resident who worked for

Defendant continually in Georgia, Plaintiff cannot avail herself of Florida civil rights laws and wage protections that do not apply to her." (Doc. 5-1, p. 14.)  The Court agrees as to some claims and disagrees as to others.

## I.     The FCRA

Turning first to the FCRA, Defendant argues that Plaintiff cannot avail herself of this statute's protections as she was an employee living and working outside of Florida and the FCRA is a "Florida law[] designed to protect Florida citizens." (Doc. 5-1, p. 14.)  Section 760.10 of the FCRA provides that "[i]t is an unlawful employment practice for an employer: (a) to discharge . . . or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's . . . marital status."  Fla. Stat. § 760.10.  The FCRA further states that its general purposes are:

> To secure for *all individuals within the state* freedom from discrimination because of race, color, religion, sex, pregnancy, national origin, age, handicap, or marital status and thereby to protect their interest in personal dignity, to make available to the state their full productive capacities, to secure the state against domestic strife and unrest, to preserve the public safety, health, and general welfare, and to promote the interests, rights, and privileges of *individuals within the state*.

Fla. Stat. § 760.01(2) (emphasis added).  The FCRA states that it "shall be construed according to the fair import of its terms and shall be liberally construed to further the general purposes stated in this section."  Fla. Stat. § 760.01(3).  It is undisputed that Plaintiff, at all times relevant to this action, resided and worked in Savannah, Georgia.  Plaintiff likewise does not meaningfully dispute the general proposition that a remote employee with no ties to Florida is not ordinarily entitled to the protections of Florida law simply because they work for a Floridian employer. (See generally doc. 11, pp. 8–10.)  Plaintiff, however, contends that, under the plain language of the FCRA, the protections are afforded to all *individuals* within the state and her claims are based on certain discriminatory acts Defendant committed against her while she was in Florida. (Id. at pp. 9–10.)

The Court begins by noting the dearth of caselaw on this issue, and neither the parties nor the Court have been able to locate cases articulating the precise intent of the Florida legislature in situations such as this.  The issue has only been meaningful touched on by a few Florida district courts in cases that differ from this case.

In Hampton v. Tem Enterprises, Inc., No. 1:19-cv-23575-UU, 2019 U.S. Dist. LEXIS 213572, at *1–4 (S.D. Fla. Dec. 19, 2019), the plaintiffs, who were residents of Arizona, Texas, and Nevada and who were working in Nevada, sued their Florida-based employer for discrimination under the FCRA.  The court, in dismissing the claims, found that the plaintiffs were not "individuals within the state" as required by the FCRA because they had not alleged that they lived or worked in Florida, that the discriminatory acts occurred in Florida, or that the state of Florida otherwise had some interest in protecting them.  Id. at *10–13.  The court found that the plaintiffs' argument was based entirely on the need "to discourage a Florida-based company from making discriminatory decisions," an interpretation that the court found would effectively "write those four words[, 'individuals within the state,'] out of the statute."  Id. at *10–12.

Similarly, in MacMartin v. Marine Management Services, Inc., No. 3:22-CV-610-BJD-LLL, 2023 WL 9469635 (M.D. Fla. Feb. 7, 2023), *report and recommendation adopted as modified*, No. 3:22-CV-610-BJD-LLL, 2023 WL 9469397 (M.D. Fla. Mar. 21, 2023), plaintiff was a resident of Missouri working on a vessel off the coast of New Jersey and New York when the actions giving rise to her claims occurred.  Id. at *4.  She alleged no further connection to Florida or that the actions giving rise to her claims occurred in Florida, focusing instead on the defendant qualifying as a Florida employer under the FCRA.  Id.  The court found that "[t]he mere fact that her pay stub reflected her location as Jacksonville, Florida," was insufficient to show she was an

individual within the state within the meaning of the statute and accordingly dismissed the claims for failing to show the FCRA applied.  Id. at *5.

Conversely, in Parry v. Outback Steakhouse of Fla., Inc., No. 8:06-CV-00804-T17TBM, 2006 WL 2919018 (M.D. Fla. Oct. 11, 2006), the court found the FCRA applicable to a plaintiff even where she lived and worked in the Cayman Islands and no discriminatory acts were alleged to have happened in Florida.  Notably, however, the plaintiff had alleged that she was previously employed at an Outback Steakhouse in Florida and had been transferred to a subsidiary location in the Cayman Islands; that she maintained her Florida driver license; that she was a registered Florida voter; and that she owned a motor vehicle registered in Florida.  Id. at *1.  The court primarily reasoned that because the FCRA was ambiguous as to whether it should apply, it must look to Title VII's purposes, which include securing freedom from discrimination for *all individuals* and preserving the general welfare of *all*.  Id. at *4.  Because Title VII extends to American citizens working in foreign countries, so too should the FCRA extend to Florida citizens working outside of Florida.  Id. at *3–4.  The court seemingly treated the plaintiff as a Florida citizen and decided that protecting Florida citizens working abroad for Florida employers fit squarely within the purposes set forth in the FCRA.  Id. at *4.

Other cases interpreting the FCRA's language have equated "individual within the state" with being a citizen of Florida.  See Sinclair v. De Jay Corp., 170 F.3d 1045, 1047 (11th Cir. 1999) (emphasis added) (noting "the very purpose of the FCRA" is to "protect[] *Floridians within the State* from invidious discrimination"); Mousa v. Lauda Air Luftfahrt, A.G., 258 F. Supp. 2d 1329, 1340 (S.D. Fla. 2003) (noting the FCRA's "purpose of protecting *Floridians* from discrimination") (emphasis added); Frey v. Amor Corr. Health Servs., Inc., No. CIV 06-60049, 2006 WL 4535802, at *2 (S.D. Fla. Mar. 10, 2006) ("[The FCRA] aim[s] to provide *Florida's citizens* with protection

7

against discrimination.") (emphasis added).  But none of these cases touched on the application of the statute to a non-Florida resident.  They instead focused on the application of the statute to an out of state employer where the plaintiff was employed in Florida.  The Court therefore does not find these passing references to "Floridians" or "Florida citizens" to be a meaningful holding that the protection of the FCRA is limited to those individuals.

In Schultz v. Royal Caribbean Cruises, Ltd., 465 F. Supp. 3d 1232 (S.D. Fla. 2020), the court found that the FCRA applied extraterritorially to a non-Floridian plaintiff.  There, an opera singer who resided in Wisconsin and applied for employment on a cruise ship with a Florida-based employer was offered a job that was later rescinded due to plaintiff's mental health.  Id. at 1243–44.  He then brought discrimination claims under both the ADA and the FCRA.  Id. at 1242–43.  The defendant-employer argued that, as a Wisconsin resident, Plaintiff could not enjoy the protections of the FCRA.  Id. at 1276.  The court, in denying the defendant's motion, found that the FCRA claim could proceed because the plaintiff "only [sought] to apply the FCRA to conduct that occurred within the state of Florida."  Id. at 1279.  In other words, while the plaintiff was herself not a Florida citizen, she fell within the definition of "individual within the state" because she suffered discrimination within the state of Florida.

After carefully reviewing all these cases, the Court cannot say that the FCRA does not apply to Plaintiff's claims, which are based at least in part on discriminatory acts she suffered while within the state of Florida.  Each of Plaintiff's FCRA claims incorporate allegations of discriminatory conduct from the January 21, 2022, lunch in Jacksonville, Florida.  For example, she alleges that she suffered marital status discrimination under the FCRA (Count VI), a claim which is seemingly based entirely on the comments made by Charu Raheja about her living situation during the Jacksonville lunch.  (Doc. 1, pp. 29–30.)  Thus, the basis of her claims is not

solely the fact that Defendant is a Florida employer, but that she suffered discriminatory acts taken by her Florida employer *while she was within the state*.  In other words, she is seeking "to apply the FCRA to conduct that occurred within the state of Florida."  Schultz, 465 F. Supp. 3d at 1279.

In reaching this decision, the Court bears in mind that it must construe the FCRA "according to the fair import of its terms" and must "liberally construe[] [the statute] to further [its] general purposes."  Fla. Stat. § 760.01(3).  Because Plaintiff has alleged that she was present in Florida when she suffered some of the discriminatory acts, by the FCRA's plain language, she was, at least at times, "an individual within the state," and she is entitled to seek the FCRA's protections in pursuing her claims.  The Court does not read any of the cited cases as contradicting this position.  See, e.g., MacMartin, 2023 WL 9469635, at *5 (finding relevant to dismissal of FCRA claim that there was "no overt allegation in the amended complaint that the alleged wrongful conduct, such as harassment or a retaliatory act, occurred in the state of Florida").  Accordingly, Defendant's Motion to dismiss Plaintiff's claims under the FCRA (Counts IV, V, and VI) is **DENIED**.

## II.     Florida Wage Laws

Defendant next challenges Plaintiff's claims brought under Florida wage laws (Counts VII and IX).  The Florida Minimum Wage Act provides minimum wage protections "for all hours worked *in Florida*."  Fla. Stat. Ann. § 448.110 (emphasis added).  Plaintiff has not provided, and the Court has not found, any authority showing that the Florida legislature intended this to apply extraterritorially to an employee working in a state other than Florida.  Absent any argument or authority from Plaintiff, the Court ascribes the plain meaning of the statute to hours worked "in Florida" which Plaintiff admits she did not do.

Indeed, Plaintiff neglected to provide any citation showing when either of the cited Florida wage laws apply extraterritorially nor did she otherwise respond to Defendant's Motion to Dismiss these claims. Accordingly, Plaintiff appears to have no objection to Defendant's Motion on these claims. See L.R. 7.5 ("Failure to respond . . . shall indicate that there is no opposition to a motion."). Because Plaintiff has not shown that the Florida wage laws that she brings her claims under apply to a remote worker in Georgia, and because she failed to respond to Defendant's Motion, the Court **GRANTS** Defendant's Motion to dismiss Counts VII and IX. See Poudel v. Mid Atl. Pros., Inc., No. CV TDC-21-1124, 2022 WL 345515, at *5 (D. Md. Feb. 4, 2022) (declining to extend Maryland wage laws to an employee of a Maryland company who performed all work outside the state where "Maryland has not stated an express intent to have the Maryland wage laws apply to the work of an employee who worked entirely outside the state" and the court could not find or "identif[y] an analogous state wage protection law that has been interpreted to apply to work occurring entirely outside of the state").

**CONCLUSION**

Accordingly, the Court **GRANTS in part** and **DENIES in part** Defendant's Motion to Dismiss.  (Doc. 5.)  Because Plaintiff has alleged that she suffered discrimination within the state of Florida, she is entitled to the protections of the FCRA under Florida law, and those claims are allowed to proceed (Counts IV, V, and VI).  Plaintiff has failed, however, to allege that she worked any hours within the state of Florida and thus availed herself to the protections of Florida wage laws.  Accordingly, those claims (Counts VII and IX) are due to be dismissed.

    **SO ORDERED**, this 9th day of August, 2024.

_____

R. STAN BAKER, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA